UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ANDREW PIERCE, | : | |
| --- | --- | --- |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:18-cv-1858 (KAD) |
| | : | |
| SCOTT SEMPLE, et al. | : | |
| *Defendants*. | : | November 26, 2018 |

# INITIAL REVIEW ORDER

On November 13, 2018, the plaintiff, Andrew Pierce, an inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil action *pro se* against Commissioner of the Department of Correction ("DOC") Scott Semple, DOC Program Director Colleen Gallagher, MWCI Warden William Mulligan, and Dr. Omprakash Pillai. Compl. (Doc. No. 1). The plaintiff is suing all four defendants in their individual and official capacities for violating his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Rehabilitation Act, and the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983, Article First, § 20 of the Connecticut Constitution,[1] and Connecticut General Statutes §§§ 46a-71, 46a-75, and 46a-77. *Id.* at 1, 5. He seeks monetary, injunctive, and declaratory relief. *Id.* at 20. On November 16, 2018, Magistrate Judge William I. Garfinkel granted the plaintiff's motion to proceed *in forma pauperis*. *See* Order No. 6. For the following reasons, the complaint is dismissed in part.

---

[1] The plaintiff states that he is bringing his claim under "Article II, Section 20 of the Constitution of the State of Connecticut." Compl. at 1. However, no such provision exists under the Connecticut Constitution. The Court presumes the plaintiff is referring to Article First, § 20, which protects against discrimination and provides for equal protection of the law.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**Allegations**

The plaintiff suffers from renal failure which requires him to undergo dialysis treatment three times per week. Compl. ¶ 30. In 2008, the DOC decided that all prisoners in need of dialysis treatment would be housed in MWCI because it would reduce the need for transportation. *Id.* at ¶ 37. The DOC cited this policy change as a "cost saving measure." *Id.* at ¶ 38.

In 2015, the plaintiff was designated as a level-three prisoner, but has since progressed to a level-one prisoner, indicating a prisoner with the least need for restrictive housing. *See* Compl. at ¶¶ 33, 35-36. However, the defendants have placed him in MWCI, a level-four facility which generally houses inmates with greater security risks or lengthier sentences. *Id.* at ¶¶ 31, 34. Although the plaintiff has been eligible for less restrictive housing assignments, the defendants have refused to transfer him out of MWCI because of his need for dialysis treatment. *Id.* at ¶ 36.

There are vast differences between MWCI, a level-four facility, and lower level facilities. Compl. ¶ 39. Inmates at MWCI are confined in their cells for longer periods of time than those at lower level facilities. *Id.* There are no level-one, level-two, or level-three facilities that confine prisoners for as long as MWCI. *Id.* at ¶¶ 40-42. Inmates at lower level facilities are also more likely to achieve success upon release whereas inmates at MWCI are at a greater risk of recidivism. *Id.* at ¶ 39. There are also greater security risks at higher level facilities like MWCI. *Id.*

The plaintiff does not have any outstanding security or classification issues which would warrant higher level security confinement. Compl. ¶ 43. On multiple occasions, he sent requests to MWCI staff that he be assigned to a facility based on his overall security classification. *Id.* at ¶ 45. The defendants denied all of his transfer requests because of his need for dialysis. *Id.* at ¶ 46.; Pl.'s Exs. A-B (Doc. No. 1 at 24-27). The plaintiff has also attempted to gain access to vocational services, which the defendants have also denied. *See* Compl. ¶¶ 81-82. The defendants have not put forth any penological interest in housing the plaintiff, a level-one inmate, at MWCI or at any high level facility. *Id.* at ¶ 48.

The plaintiff's confinement at MWCI has twice placed him at risk for life threatening infections. Compl. ¶ 49. He is particularly susceptible to staph infections, and his confinement at MWCI, a much less sterile facility, has exposed to him greater risks of infections in his dialysis port. *Id.* at ¶¶ 50-56. In 2014, he brought suit against Dr. Pillai after he contracted Methicillin-resistant Staphylococcus aureus ("MRSA") at MWCI and was denied antibiotics for treatment. *Id.* at ¶ 53; *Pierce v. Pillai*, No. 3:14-CV-1477 (VLB), 2014 WL 5242885 (D. Conn. Oct. 15, 2014).[2]

On October 1, 2018, while undergoing dialysis treatment, the plaintiff exhibited symptoms of infection, including low blood pressure, lethargy, dizziness, and a high body temperature. Compl. ¶ 57. He was rushed to the emergency department at the UConn Health Center where he was immediately placed on an antibiotic regimen. *Id.* at ¶¶ 58-59. Two days later, he underwent surgery to remove the infected tissue and install a temporary catheter. *Id.* at ¶¶ 60-61. On October 4, doctors placed a "wound vacuum" ("VAC")[3] on his open surgical wound. *Id.* at ¶ 63. His catheter was removed on October 5. *Id.* at ¶ 64. A permanent catheter was placed in his groin on October 8. *Id.* at ¶ 66. The plaintiff was discharged from UConn on October 9. *Id.* at ¶ 67. His treating physician, Dr. Shu, ordered that a VAC be replaced upon his return to MWCI in order to properly effectuate the healing of his surgical wounds and decrease pain. *Id.*

---

[2] On November 15, 2016, Judge Vanessa Bryant granted summary judgment in favor of the defendant, Dr. Pillai, because the plaintiff failed to present any evidence that Dr. Pillai acted with deliberate indifference to his medical needs. *Pierce v. Pillai*, No. 3:14-CV-1477 (VLB), 2016 WL 6774225 (D. Conn. Nov. 15, 2016).

[3] A vacuum-assisted closure or "VAC" is a healing device placed on an open wound to remove excess fluid, decrease air pressure, and stimulate new tissue growth. Vacuum-Assisted Closure of a Wound, Health Library, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/healthlibrary/test_procedures/other/vacuum_assisted_closure_of_a_wound_135,381.

When he returned to MWCI on October 9, officials informed the plaintiff that they did not have a replacement VAC and sent him back to his housing unit. Compl. ¶ 68. Instead, the plaintiff was placed on Oxycodone, a powerful opiate, for his pain. *Id.* at ¶ 69. The next day, he was re-admitted to the medical unit at MWCI pending his application for a replacement VAC. *Id.* at ¶ 70. On October 11, he was evaluated by the Dr. Pillai, who informed him that he had cancelled Dr. Shu's order for a VAC and would instead prescribe Oxycodone. *Id.* at ¶ 71. The plaintiff told Pillai that he was not comfortable taking heavy doses of opiates for thirty days and would really prefer the VAC. *Id.* at ¶ 72.

After a few weeks on Oxycodone, the plaintiff began noticing signs of addiction. Compl. ¶ 73. Although he informed medical staff at MWCI about his condition and requested that Pillai honor Dr. Shu's order for a VAC, the plaintiff was kept on the same treatment regimen. *Id.* at ¶ 74. The plaintiff went to the medical unit and spoke with a nurse, requesting that he be taken off Oxycodone. *Id.* at ¶ 75. The nurse agreed. *Id.* Subsequently, the plaintiff experienced numerous withdrawal symptoms, including chills, body aches, anger, and depression. *Id.* at ¶ 76.

**Discussion**

**ADA and Rehabilitation Act**

The plaintiff purports to brings claims against all defendants in both their individual and official capacities, for violating his rights under Title II of the ADA and § 504 of the Rehabilitation Act. However, "neither Title II of the ADA nor §504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001). *See*

*also, Super v. J. D'Amelia & Associates, LLC*, No. 3:09-CV-831 (SRU), 2010 WL 3926887, at *13 (D. Conn. Sept. 30, 2010); *Nails v. Laplante*, 596 F. Supp. 2d 475, 481 (D. Conn. 2009). Therefore, claims against the defendants in their individual capacities shall be dismissed. The court next looks to whether the plaintiff has adequately stated a claim against the defendants in their official capacities.[4]

Preliminarily, the court notes that Congress expressly abrogated the States' Sovereign Immunity with respect to claims brought under Title II of the ADA. *United States v. Georgia,* 546 U.S. 151,159 (2006). However, whether sovereign immunity was abrogated by the Rehabilitation Act, or whether states are deemed to have waived sovereign immunity by accepting federal funds, is a less settled question. Several district court decisions have held that Connecticut has waived its sovereign immunity with respect to claims brought under § 504 of the Rehabilitation Act whether for compensatory or injunctive relief. *See Super*, 2010 WL 3926887, *12; *see also Fowler v. Department of Corr.*, No. 3:17-CV-00848 (JAM), 2017 WL 3401252, at *5 (D. Conn. Aug. 8, 2017) (plaintiff may bring official capacity suit against state or its agent under § 504 of Rehabilitation Act). Moreover, the Connecticut Appellate Court, in *Mercer v. Strange*, 96 Conn. App. 123, 131 n.8 (2006) acknowledged the district court's determination in this regard. For purposes of this review, this issue does not present an impediment to the plaintiff's complaint.

To state a claim under the ADA or Rehabilitation Act, the plaintiff must allege: (1) that he is a "qualified individual" with a disability; (2) that he was excluded from

---

[4] A claim against a state official in his/her official capacity is essentially a claim against the state. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

6

participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). Furthermore, proof required under the ADA is substantially the same as for claims brought under § 504 of Rehabilitation Act. *Clarkson v. Coughlin*, 145 F.R.D. 339, 348 (S.D.N.Y. 1993). A "qualified individual" is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Fulton*, 591 F.3d at 43 (quoting 42 U.S.C. § 12131(2)). The ADA and Rehabilitation Act both require that the plaintiff demonstrate a physical or mental impairment to be deemed to have a "disability." *Smith v. Masterson*, 353 F. App'x 505, 507 (2d Cir. 2009). "A qualified individual can base a discrimination claim on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton*, 591 F.2d at 43 (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003)). Intentional discrimination may be inferred when the official acted with "deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy . . . or custom." *Bartlett v. New York State Bd. Of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998) (internal quotations omitted), *overruled on other grounds*, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).

Here, the plaintiff alleges that the DOC's decision to confine all inmates in need of dialysis treatment at MWCI, regardless of their security classification, to reduce

transportation costs amounted to discrimination under the ADA and Rehabilitation Act. The defendants rejected all of his transfer requests because of his medical condition and his need for dialysis, despite the fact that he is a level-one prisoner and could be confined at a facility with a much lower-level security classification. The court does not speculate as to whether non-discriminatory reasons exist for the DOC's decision to house the plaintiff at MWCI. Construing the plaintiff's allegations liberally, the ADA and Rehabilitation Act are sufficiently pled at this stage and may proceed against the defendants in their official capacities for compensatory, injunctive, and declaratory relief.

**42 U.S.C. §1983 – Eighth Amendment Claims**

Pursuant to 42 U.S.C. §1983, the plaintiff brings what appear to be two distinct Eighth Amendment claims. One is based on his confinement in MWCI, despite his susceptibility to infection, and the other is based on Dr. Pillai's refusal to order a VAC and over-prescribing Oxycodone. The Court construes the plaintiff's allegations as claims of deliberate indifference to serious medical needs.

Preliminarily, again, the complaint purports to bring these claims against all defendants in both their individual and official capacities. To the extent that the plaintiff seeks money damages from the defendants in their official capacities, such a request for relief is barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); Quern v. Jordan, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

To prevail on a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his need was serious and that defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original; internal quotations omitted). Subjectively, defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983. *Salahuddin*, 467 F.3d at 280; *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Moreover, a difference of opinion regarding what constitutes an appropriate response and/or treatment to the prisoner's medical conditions does not establish an Eighth Amendment claim. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The act complained of must "shock[] the conscience" by

9

constituting a "[a] complete denial of, or intentional effort to delay access to, medical care, or a reckless or callous indifference" to the plaintiff's well-being. *See McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (quoting *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970); citing *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D.N.Y. 1984)).

The plaintiff has not stated a plausible Eighth Amendment claim against Semple, Gallagher, or Mulligan. Although the allegations show that he suffers from a serious medical condition, they do not include allegations that any of these defendants consciously disregarded a substantial risk that the plaintiff would suffer harm solely based on his confinement in MWCI. Indeed, the plaintiff does not mention any of these defendants in his statement of facts. It appears he has named them as defendants simply because they maintain supervisory roles at MWCI and in the DOC.

However, the doctrine of *respondeat superior* is not a basis for a finding of liability or the awarding of monetary damages under § 1983. *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973). This is so because "the personal involvement of [the named] defendants in [the] alleged constitutional deprivations is a prerequisite to an award of damages under section 1983." *Gill v. Pidlypchak,* 389 F.2d 379, 380 (2d Cir. 2004); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994). *See also*, *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005)("[A] plaintiff must show … that the defendant was personally involved—that is, he directly participated—in the alleged constitutional deprivations.") "Direct participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." As a result, a supervisor, who is not

10

alleged to have directly participated in the alleged constitutional violation, may only be liable under Section 1983 if he "was grossly negligent in supervising subordinates who committed the wrongful acts; or … [he] exhibited deliberate indifference to [plaintiff's] rights by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). Therefore, the Eighth Amendment claims against defendants Semple, Gallagher and Mulligan are dismissed without prejudice. The plaintiff may amend the complaint within 21 days to include allegations as would satisfy the principles outlined herein, should the plaintiff believe such facts to exist.

As to Dr. Pillai, construed liberally, the plaintiff's allegations state a plausible Eighth Amendment claim for deliberate indifference to medical needs. The plaintiff alleges that Dr. Pillai cancelled Dr. Shu's order for a VAC to help heal the plaintiff's surgical wound and over-prescribed Oxycodone which caused the plaintiff to develop addiction symptoms. The Court will permit the Eighth Amendment claim for deliberate indifference to medical needs to proceed against Dr. Pillai in his individual capacity for damages and in his official capacity for injunctive relief.[5]

Finally, the plaintiff requests that the Court exercise supplemental jurisdiction over his state law discrimination claims. This Court may exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), which provides in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that

---

[5] Because the plaintiff's Eighth Amendment claim against Dr. Pillai concerns only past actions, there is no basis for declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past).

11

they form part of the same case or controversy under Article III of the United States Constitution.

"[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Valencia ex rel. Franco v. Lee*, 316 F3d 299, 305 (2d Cir. 2003) (citing and quoting *United Mine Workers v. Gibbs*, 383 U.S. 715,725 (1966)). Therefore, district courts apply the "common nucleus of operative fact" test to determine whether supplemental jurisdiction exists in a given case. *See, e.g., Morris v. Yale University School of Medicine*, No. 05-CV-848 (JBA), 2006 WL 908155, at *3 (D. Conn. Apr. 4, 2006).

In this case, the plaintiff claims that the defendants' decision to confine him at MWCI because of his medical condition was discriminatory and, thus, violated Article First, § 20 of the Connecticut Constitution[6] and Connecticut General Statutes §§§ 46a-71, 46a-75, and 46a-77.[7]

The Court agrees that the state law claims arise from the same set of facts as his ADA claim, which the Court has permitted to proceed. However, neither this court nor the Connecticut Supreme court has ever recognized a private cause of action under Article First, § 20 of the Connecticut Constitution. *See Campbell v. Quiros*, No. 3:17-CV-946 (CSH), 2018 WL 888723, at *11 (D. Conn. Feb. 13, 2018). Indeed, it appears

---

[6] Article First, § 20 of the Connecticut Constitution provides that "[n]o person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[7] Section 46a-71 prohibits state agencies from discriminating through their services and use of state facilities. Section 46a-75 prohibits discrimination in state-created educational and vocational programs. Section 46a-77 mandates that state agencies comply with the provisions of the Commission on Human Rights and the ADA to ensure non-discriminatory practices.

that the Superior Court of the State of Connecticut has consistently and unanimously declined to recognize such a cause of action. *See, Minto v. Dep't of Mental Health & Addiction Servs.,* No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018)("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20, of the Connecticut Constitution") and cases cited therein. Similarly, it is unclear under Connecticut law whether the statutes relied upon establish a private right of action for compensatory or other relief. *See e.g. Phillips v. Town of Hebron*, No. 16-CV-1726 (MPS), 2017 WL 3387133, at *5 (D. Conn. Aug. 7, 2017) (whether § 46a-75 creates private cause of action is question of state law). These issues have not been determined in the state courts. Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims.

**Conclusion**

The ADA and Rehabilitation Act claims against all defendants in their individual capacities are DISMISSED WITH PREJUDICE. The ADA and Rehabilitation Act claims may proceed against all defendants in their official capacities for compensatory, injunctive, and declaratory relief.

The §1983 Eighth Amendment claims of deliberate indifference to medical needs against defendants Semple, Mulligan and Gallagher are DISMISSED WITHOUT PREJUDICE subject to the filing of an amended complaint within 21 days. Any amended complaint must state specific facts showing how, if at all, Semple, Mulligan, and Gallagher were either personally involved in the alleged constitutional deprivations, or are otherwise liable as supervisors as set forth above. The amended complaint may not state any new claims or list any new defendants. Failure to file an amended complaint

that complies with these instructions within twenty-one (21) days from the date of this order shall be deemed an abandonment of the Eighth Amendment claim against Semple, Mulligan, and Gallagher and the dismissal shall be with prejudice.

The §1983 Eighth Amendment claim of deliberate indifference to medical needs as against Dr. Pillai in his individual capacity for damages and in his official capacity for injunctive relief may proceed.

The state law claims are dismissed.

**Orders**

(1) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(2) The Clerk shall verify the current work address for Dr. Pillai with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (ECF No. 1) to him at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If Dr. Pillai fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants Semple, Gallagher, and Mulligan shall file their response to the

complaint, either an answer or motion to dismiss, within **twenty-one (21) days** after service. Dr. Pillai shall file his response within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of November 2018.

                                                                                        _____/s/_____
                                                                                        Kari A. Dooley
                                                                                       United States District Judge