UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDREW PIERCE,
    Plaintiff,

v.                                           3:18cv1858 (KAD)

SCOTT SEMPLE et al.,
    Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS [ECF NO. 18]

On November 13, 2018, Plaintiff Andrew Pierce, an inmate who was confined at the MacDougall-Walker Correctional Institution ("MWCI"), brought this action against Commissioner of the Department of Correction ("DOC") Scott Semple, DOC Program Director Colleen Gallagher, MWCI Warden William Mulligan, and Dr. Omprakash Pillai. Compl. [ECF No. 1].[1] In his verified complaint, Plaintiff alleged claims against all four defendants in their individual and official capacities for violating his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Rehabilitation Act, and the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, Article First, § 20 of the Connecticut Constitution,1 and Connecticut General Statutes §§§ 46a-71, 46a-75, and 46a-77. *Id.* at 1, 5.

In its Initial Review Order dated November 16, 2018, the Court dismissed Plaintiff's ADA and Rehabilitation Act claims against all Defendants in their individual capacities with prejudice but permitted these claims to be brought against the Defendants in their official capacities to the extent the Plaintiff sought prospective injunctive relief. The court dismissed

---

[1] Plaintiff is proceeding *pro se* and *in forma pauperis*.

without prejudice to repleading Plaintiff's Eighth Amendment claims against Defendants Semple, Mulligan and Gallagher;[2] and permitted to proceed as plausible Plaintiff's Eighth Amendment deliberate indifference to medical needs claim as against Dr. Pillai in his individual capacity for damages and in his official capacity for injunctive relief.   [ECF No. 7 at 13-14].

Defendants filed a motion to dismiss (1) all claims for equitable relief due to lack of subject matter jurisdiction, and (2) Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Pillai for failure to exhaust the relevant administrative remedies. [ECF No. 18]. The Plaintiff responded on September 25, 2019. [ECF No. 26]. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

**STANDARD OF REVIEW**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   A plaintiff who seeks to invoke the authority of the court bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence.   *Id.*   In determining whether the plaintiff has met this burden, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).   In addition, a district court "may refer to evidence outside the pleadings" when "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[.]"   *Makarova*, 201 F.3d at 113.

---

[2]  Plaintiff did not file an amended complaint within the time period set forth by the Court.

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). [D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint,[3] or matters of which the Court can take judicial notice. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks and citations

---

[3] A document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect . . . ." C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

omitted). So too must a *pro se* litigant be able "to allege facts demonstrating that her claims arise under this Court's ... jurisdiction." *Gray v. Internal Affairs Bureau*, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003). Absent such a showing the "complaint must be dismissed." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

**FACTUAL ALLEGATIONS**[4]

Plaintiff suffers from renal failure which requires him to undergo dialysis treatment three times per week. [ECF No. 1 at ¶ 30]. In 2008, the DOC decided that all prisoners in need of dialysis treatment would be housed in MWCI because it would reduce the need for transportation. *Id.* at ¶ 37. The DOC cited this policy change as a "cost saving measure." *Id.* at ¶ 38. Dr. Omprakash Pillai, who was Plaintiff's primary care physician at MWCI, ignored known dangers, countermanded medical orders by specialists, and allowed Plaintiff to develop an opiate addiction to treat pain rather than follow corrective surgery. *Id.* at 12.

In 2015, Plaintiff, as a level-one prisoner, required the least need for restrictive housing. *See Id.* at ¶¶ 33, 35-36. However, Defendants placed him in MWCI, a level-four facility, which generally houses inmates with greater security risks or lengthier sentences. *Id.* at ¶¶ 31, 34. Defendants refused to transfer him out of MWCI because of his need for dialysis treatment. *Id.* at ¶ 36. Defendants denied Plaintiff's attempt to gain access to vocational services. *See Id.* at ¶¶ 81-82.

On October 1, 2018, while undergoing dialysis treatment, Plaintiff exhibited symptoms of infection, and he was rushed to the emergency department at UConn Health Center where he was

---

[4] The Court incorporates herein the Initial Review Order's recitation of the Plaintiff's allegations, [ECF NO. 7 at 2-5]; Pierce v. Semple, No. 3:18-CV-1858 (KAD), 2018 WL 6173719, at *3 (D. Conn. Nov. 26, 2018).

placed on an antibiotic regimen.  *Id.* ¶¶ 57-59.  Two days later, he underwent surgery to remove the infected tissue and install a temporary catheter.  *Id.* at ¶¶ 60-61.  On October 4, doctors placed a "wound vacuum" ("VAC")[3] on his open surgical wound.  *Id.* at ¶ 63. His catheter was removed on October 5, and a permanent catheter was provided on October 8.  *Id.* at ¶¶ 64, 66.  Plaintiff was discharged from UConn on October 9.  *Id.* at ¶ 67.  His treating physician, Dr. Shu, ordered that a VAC be replaced upon his return to MWCI in order to properly effectuate the healing of his surgical wounds and decrease pain.  *Id.*

When he returned to MWCI on October 9, officials informed Plaintiff that they did not have a replacement VAC and sent him back to his housing unit.  *Id.* at ¶ 68.  Instead, Plaintiff was placed on Oxycodone, a powerful opiate, for his pain.  *Id.* at ¶ 69.  The next day, he was re-admitted to the medical unit at MWCI, pending his application for a replacement VAC.  *Id.* at ¶ 70.  On October 11, he was evaluated by the Dr. Pillai, who informed Plaintiff that he had cancelled Dr. Shu's order for a VAC and would instead prescribe Oxycodone.  *Id.* at ¶ 71.  Plaintiff told Dr. Pillai that he was not comfortable taking heavy doses of opiates for thirty days and would prefer the VAC.  *Id.* at ¶ 72.

After a few weeks on Oxycodone, Plaintiff began noticing signs of addiction.  *Id.* at ¶ 73.  Plaintiff informed medical staff at MWCI about his condition and requested that Dr. Pillai honor Dr. Shu's order for a VAC, but he was kept on the same treatment regimen.  *Id.* at ¶ 74.  Plaintiff went to the medical unit and spoke with a nurse, requesting that he be taken off Oxycodone.  *Id.* at ¶ 75.  The nurse agreed.  *Id.*  Subsequently, Plaintiff experienced numerous withdrawal symptoms, including chills, body aches, anger, and depression.  *Id.* at ¶ 76.

**DISCUSSION**

<u>Claims for Injunctive and Declaratory Relief</u>

Plaintiff seeks equitable relief against all defendants in their official capacity for alleged violations of the ADA and § 505 of the Rehabilitation Act; and he seeks injunctive relief against Dr. Pillai for violation of the Eighth Amendment in his official capacity [ECF. No. 1 at 20]. Specifically, he seeks an injunction requiring Defendants to provide him with the same access to programs, treatment, counseling, education, and community release opportunities as similarly situated non-disabled Connecticut state prisoners; and an injunction "declaring the practices and procedures complained of to be violative of the various statutory and/or constitutional provisions cited herein." *Id.*

Defendants assert that Plaintiff's claims for injunctive and declaratory relief are barred by the Eleventh Amendment and are moot. In support of their motion to dismiss for lack of subject matter jurisdiction, Defendants have submitted the declaration of Plaintiff's Parole Officer Montoya, who states that Plaintiff was transferred to a halfway house on November 19, 2018, and then moved to a transitional placement in a friend's residence on April 22, 2019.[5] [ECF No. 18-2 at 2]. Officer Montoya also represents that Plaintiff now receives his medical care from his own providers and that he is employed at a business in Torrington, Connecticut. In his response to the motion to dismiss, Plaintiff does not contest these representations. [ECF No. 26].

The Eleventh Amendment prohibits suits against a state, its administrative agencies, and its state officials acting in their official capacities, absent the state's consent. *See Alabama v.*

---

[5] Defendants have attached the declaration of Parole Officer Montoya, a copy of the State of Connecticut Parole & Community Services Offender residence record and DOC's recent RT60 Movement History that confirm Plaintiff's transfer from MWCI to his current address. ECF at 18-2, ex. 1, A and B.

*Pugh*, 438 U.S. 781, 781–782 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a limited exception to the Eleventh Amendment immunity where a plaintiff sues a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. *Id*. at 155–56. This exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000).

In its initial review order, the Court ruled that Plaintiff's claim for declaratory relief based on Dr. Pillai's past conduct in violation of the Eighth Amendment was barred by the Eleventh Amendment. [ECF NO. 7 at 11]; Pierce v. Semple, No. 3:18-CV-1858 (KAD), 2018 WL 6173719, at *5 n.5. Defendants now move for dismissal of Plaintiff's claims for declaratory relief against them in their official capacities based on Title II of the ADA and Rehabilitation Act, because, having been released from custody, he has no claim of a continuing violation of these laws as required under *Ex Parte Young*. The court agrees.

"Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). However, pursuant to the *Ex parte Young* exception, "Title II and Rehabilitation Act suits for prospective injunctive relief may . . . proceed against individual officers in their official capacity." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Plaintiff is no longer incarcerated or housed at MWCI, and therefore, he can no longer assert a claim for prospective injunctive relief premised on a continuing violation of federal law, specifically the

ADA or Rehabilitation Act. And as previously held, any claim that the defendants violated his rights in the past is barred by the Eleventh Amendment.

In addition, pursuant to Article III of the Constitution, an actual and concrete live controversy must exist to justify court intervention. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018). "A case that becomes moot at any point during the proceedings is no longer a Case or Controversy for purposes of Article III, and is outside the jurisdiction of the federal courts." *Id.* (internal quotation marks omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71-72 (2013); *Connecticut Office of Prot. and Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.* 464 F.3d 229, 237 (2d Cir. 2006) (quoting *Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974)). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

Thus, it follows that a prisoner's transfer from one correctional facility to another generally moots his claims for prospective injunctive relief against officials of that facility. *See Shepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006) (same); *Michalski v. Erfe,* No. 3:17-CV-2074 (VAB), 2019 WL 5965204, at *10 (D. Conn. Nov. 13, 2019) (injunctive relief is only available against defendants involved with care at current institution).

In his response, Plaintiff argues that the statutory and constitutional violation are capable of repetition because even though he is on parole, he is still in DOC custody and could be returned to MWCI or another facility. [ECF No. 26 at 2]. He asserts the capable of repetition, yet evading review doctrine as an exception to the general rule of mootness. *Murphy v. Hunt,* 455 U.S. 478, 482–83 (1982). However, this doctrine is limited to cases where the challenged action is of duration too short to be fully litigated prior to cessation or expiration; and there is a "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Because Plaintiff is no longer housed at MWCI or any other DOC facility, Plaintiff's claims for injunctive relief are moot. Defendants can no longer provide him with access to the same programs, treatment, counseling, education, and community release opportunities as similarly situated non-disabled Connecticut state prisoners. Likewise, Plaintiff is not receiving medical care from Dr. Pillai at MWCI. Although Plaintiff asserts that he could be returned to MWCI or another DOC facility, a general possibility of a return or transfer is too speculative to satisfy the exception to the mootness. *See Preiser v. Newkirk,* 422 U.S. 395, 403 (1975); *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2018 WL 4571679, at *10 (S.D.N.Y. Sept. 24, 2018) (collecting cases finding that inmates' claims of possible future transfer or return to institution is too speculative to satisfy capable of repetition doctrine). Accordingly, the motion to dismiss is granted as to Plaintiff's claims for injunctive relief against all defendants based on the ADA and the Rehabilitation Act, and any § 1983 claim for injunctive relief against Dr. Pillai.

Dr. Pillai - Failure to Exhaust

Dr. Pillai also asserts that Plaintiff has failed to exhaust his administrative remedies pursuant to Administrative Directive 8.9 with respect to his Eighth Amendment claims arising out of his medical care in October 2018. In support of the motion to dismiss, Dr. Pillai filed a declaration from Health Services Review Coordinator Ostheimer, who searched for the MWCI electronic log for any Health Services Reviews filed by Plaintiff and reviewed the Health Service Review archive in the MWCI medical unit for the 2018 calendar year. Ostheimer states his search returned no Health Services Reviews filed by Plaintiff.[6]

The Prison Litigation Reform Act of 1996 ("PRLA"), which governs actions brought by prison inmates, requires prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[7] 42 U.S.C. 42 US.C. § 1997e(a). Failure to exhaust is an affirmative defense under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e, and inmates need not plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 217 (2007). Defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. See Johnson v. Mata, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment."). Thus, the issue of exhaustion is generally more appropriate for consideration on a motion for summary judgment. *See Paschal-*

---

[6] The Court reviews these materials because Plaintiff has alleged that he has exhausted his administrative remedies in his complaint, and exhaustion is an issue integral to Plaintiff's claim. *See Allen v. Kunkel*, No. 3:18-CV-297 (JCH), 2018 WL 3553335, at *4 (D. Conn. July 23, 2018).

[7] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

*Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *3 (D. Conn. June 28, 2019). However, a court may consider material extrinsic to the pleadings on a motion to dismiss for nonexhaustion without converting the motion pursuant to Federal Rule of Civil Procedure 12(d) because exhaustion is an integral part of a prisoner's claim.[8] *See Allen v. Kunkel*, No. 3:18-CV-297 (JCH), 2018 WL 3553335, at *4 (D. Conn. July 23, 2018).

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95.

DOC Administrative Directive 8.9 governs the administrative remedies for health services. It provides for two types of Health Services Review: (1) Diagnosis and treatment, which include a decision not to provide treatment; and (2) Review of an Administrative Issue, which addresses concerns of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." § 9.

Pursuant to Section 10 of Directive 8.9, both types of grievances require an inmate to seek informal resolution of "the issue face to face with the appropriate staff member or with a

---

[8] Plaintiff has pleaded that he exhausted his administrative remedies, and he has attached documents relevant to his appeal of an "ADA Decision." [ECF No. 1, ex. A & B].

11

supervisor via written request utilizing CN 9601 Inmate Request Form." A response to the inmate shall be made within fifteen days of the written request.

An inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful." § 11. The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box. Id. Upon receipt of CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider. § 11(A). If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the Health Services Review. § 11(A). The physician shall notify the inmate of the decision, in writing, within ten business days by indicating "No Further Action" in the disposition field. Id. "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the [URC] for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate[.]" § 11(B). Here, Plaintiff sues Dr. Pillai with respect to treatment decisions regarding his care.

In this instance, Plaintiff has filed a verified complaint, which may be treated as an affidavit. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). In his complaint, he asserts that he has exhausted his administrative remedies. In the section of his complaint entitled "Exhaustion of Administrative Remedies," Plaintiff describes exhaustion of his administrative remedies relevant to his request for accommodation. [ECF No. 1 at ¶¶ 23-28]. In his response to the motion to dismiss, he asserts: "As described in plaintiff's complaint at par. 75, the plaintiff followed the defendants['] policy regarding health services remedies (Ad. Dir. 8.9 § 10)" by

attempting to seek an informal resolution "face to face with the appropriate staff members" prior to filing a Health Services Review. [ECF 26 at 4-5]. At paragraph 75 of the verified complaint, plaintiff alleges that he told the nurse that he wanted to be removed from the Oxycodone and that the nurse "agreed." Plaintiff argues that Directive 8.9 does not authorize filing a grievance after a successful resolution. The Defendant did not file a reply to this argument.

The Court must draw "all reasonable inferences in the nonmovant's favor[,]" *Interworks Sys. Inc.*, 604 F.3d at 699, and construe the complaint "most liberally to raise the strongest arguments it suggests." *Walker*, 717 F.3d at 124. Administrative Directive 8.9 § 11 provides that "[a]n inmate, who is dissatisfied with a diagnosis or treatment that pertains to him/herself, may apply for a Health Services Review if informal resolution via inmate request was unsuccessful." The Directive provides no instruction that the "informal resolution via inmate request" must be made or documented in writing.[9] *See* 8.9 § 10. Further, it does not direct an inmate who has informally resolved his issue regarding treatment or diagnosis to then file a Health Services Review. Once an inmate obtains a favorable resolution under the administrative remedy procedure, no further appeal is necessary, and the administrative remedies are exhausted. *Ortiz v. McBride*, 380 F.3d 649, 652-53 (2d Cir. 2004).

Accordingly, Plaintiff's allegations that he succeeded in resolving his medical treatment complaint through an informal "face to face" communication are adequate, at this stage of the proceedings, to defeat a motion to dismiss. The record must be developed on the issue of whether Plaintiff has satisfied Directive 8.9's exhaustion procedure. *See Gibson v. Brooks*, 335 F. Supp.

---

[9] Section 10 only requires a written request when the inmate seeks informal resolution with a supervisor.

2d 325, 333 (D. Conn. 2004) (finding that plaintiff's evidence that he informally resolved his complaint through personal interaction with prison staff precluded finding nonexhaustion as matter of law). The motion to dismiss for failure to exhaust is denied.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss [ECF #18] is GRANTED in part and DENIED in part. Plaintiff's claims against all defendants in their official capacities seeking injunctive and declaratory relief are DISMISSED. Plaintiff's Eighth Amendment claim for damages against Dr. Pillai in his individual capacity shall proceed.

**SO ORDERED** this 15th day of January 2020, at Bridgeport, Connecticut.

___/s/_____
Kari A. Dooley
United States District Judge